My name is Barry Pickens and I am counsel for the appellants Charles Degnan and others, including the putative class of late enrollees into the Part B of Medicare and who claim that part of their social security benefits were reduced based on an improper calculation of their premiums for that program in contravention of the federal statute. The question presented by the appeal here today is the same question that was presented to the court in Titus v. Sullivan and that is whether the district court erred in granting the government's motion to dismiss based upon a facial challenge to the complaint where the complaint invoked subject matter jurisdiction, quote, in accordance with the requirements of Bowen v. City of New York. And as was the case in Titus v. Sullivan where a facial challenge is raised, the answer should be no and for the same reasons that this court so concluded in Titus v. Sullivan. Let me begin by pointing out the obvious that in a facial challenge the standard of review is different than it would be if there had been an evidentiary hearing on the motion to dismiss or if there had been a summary judgment motion based on the lack of subject matter jurisdiction. There was none of those. If you read the government's brief here, you would get the appearance that the district court either made findings of fact or that there was some kind of failure of proof by the plaintiffs, but that's not so. This was a motion to dismiss decided solely based upon the facial challenge raised by the government, just as was the case in Titus v. Sullivan. I have to tell you that this takes me back when I first started studying tax law a long time ago and I learned about the commissioner's practice of non-acquiescence, which meant that if one taxpayer managed to win a case that the commissioner and the IRS thought was an unfortunate judicial ruling, they would tell the world non-acquiescence, which would mean that if it was a circuit court opinion, it would be, of course, binding in that circuit, but if you live somewhere else, you're going to have to fight it all over again. Now, this is the same kind of agency practice. And I cannot believe that the law has changed in these 50 years such that an administrative agency can no longer pursue that tactic. Your Honor, our position isn't necessarily... You want to stay in the jurisdiction that came out with a friendly decision, frame a class action that will preclude the agency from testing its position elsewhere to see whether the next jurisdiction, the next circuit over, may have a different view of the ruling, and if so, whether the U.S. Supreme Court will ultimately resolve a conflict. You want to wipe that out, right? Yes or no? I don't think so, Your Honor. I don't think that we can do anything to stop challenges that will arise in other circuits. Mr. Degnan was the... You have a nationwide class? I read the pleading. Your Honor, that is true, Your Honor. Well, then why isn't the answer yes? I mean, let's have a little candor. Your Honor, I... That's what you're doing. If your nationwide class is certified. We, and if it were the first case to go to judgment on that issue, it would have preclusive effects with respect to a nationwide class if it's certified, Your Honor, but we are doing nothing to try and dissuade other claimants in other jurisdictions from raising challenges or... If they opt out. Or if, you know, in the interim... So this kind of facial challenge in a situation where, and the tax regime is a good example, you have to exhaust individually as a taxpayer to come to court with a challenge, and this is the same regime. Only, if anything, 405H is even perhaps stricter. Can't be... I guess maybe nothing could be stricter than the tax code, but it's the same environment. So I say to myself, this can't be right. The waving aside exhaustion, statutory exhaustion by saying we've got a facial challenge in this kind of agency situation can't be right. Well, what's wrong with my reaction? The Supreme Court has decided in two cases that are cited in the brief, Bowen v. City of New York, and then in discussing the difference between a challenge based on failure to exhaust administrative remedies and the channeling requirement, the Supreme Court in Shalala v. Illinois Council on Long-Term Care... But you just misread that, and I... I would be happy to discuss that with you, Your Honor, but the first case and the Supreme Court case invoked by the complaint is Bowen v. City of New York, and in that case, as in other cases... That was the secrecy case, right? There was a secret system-wide policy, and, Your Honor, but what Bowen v. City of New York holds is that contrary to what the district court held here, the Matthews v. Eldridge test is not a conjunctive test in the Medicare context, just as, in other words, the three factors discussed in Bowen v. City of New York, including the two factors which come from the constitutional injunction case, Matthews v. Eldridge, are to be considered independently. The court said that they aren't to be mechanically applied. It quoted Matthews v. Eldridge and said that it's intensely practical. My point, Your Honor, is that the law is clear that futility, where futility can be established, is a standalone exception, and that's where the district court went wrong here. And what the Supreme Court said about futility... I think this conjunctive-disjunctive is... What I can tell you for sure... The district court's equity analysis, after it pointed out the non-collateral aspect of this, strikes me as exactly what the conjunctive standard would require. So, for you to say, this is this, a remand is demanded because there was not... Where in-home health wasn't obeyed is not persuasive. Your Honor, the in-home health case is one of the cases we cited, but the linchpin of the argument is Bowen v. City of New York. And Bowen v. City of New York says in no uncertain terms that where the challenge to a determination regarding Social Security and or Medicare benefits is a challenge to a system-wide practice, as opposed to a determination based on the individualized facts of a claimant. And I'm nearly quoting, I'm paraphrasing, but I'm nearly quoting. That kind of claim, that kind of system-wide challenge stands on a different footing for purposes of waiver of the exhaustion of administrative remedies requirements, because it doesn't make any sense that the underlying purposes in the language of Bowen aren't served there. We're not trying to develop a factual record. We're not trying to make individualized determinations where the agency process would make any difference. So the black letter law handed down in Bowen v. City of New York and never contradicted, and in fact buttressed by Shalala v. Illinois Council, is that the kind of claim that my clients are bringing stands on a different footing for purposes of waiver of the exhaustion of administrative remedies requirements. And so Titus v. Sullivan and Bowen v. City of New York taken together mean that the facial challenge must fail. We've invoked Bowen v. City of New York. We've expressly invoked it by name in the second amended complaint. We've alleged futility for other reasons as well. As Your Honor pointed out, we allege that this policy is even more entrenched than the regulation. The government here has taken the position that even though they lost in Degnan 1, where the same plaintiff and some additional named plaintiffs have now brought a claim, they still aren't going to change their policy. It's clear that going back to the agency and asking for further determination will serve absolutely no purpose. And Bowen v. City of New York directs that lower courts apply the waiver standard for exhaustive administrative requirements in a practical way, in a non-mechanical way, and where the underlying purposes can't be served. Well, I disagree with you, it serves no purpose. I mean, I can think of a lot of useful purposes of bringing out more beneficiaries of fact situations to test the agency's regulation that you're challenging, and if nothing else, the usefulness of more than one of our 94 district courts working on the problem, you completely ignore that. Your Honor, Mr. Degnan was aggrieved in Degnan 1, and he brought this case. He's gone, and he's taken care of it. Well, Your Honor, there's a factual, well, there isn't a factual dispute. This was a facial challenge. The complaint expressly alleges that the recalculated benefit, when my clients had to bring it to the government's attention, they said, whoops, we reverted back to calculating the premiums contrary to Degnan 1, and attempted to make a refund. The allegations of the second minute complaint are that that did not move the problem, because they still miscalculated it. There's still an under payment to Mr. Degnan for the error that was committed by following the old formula under the regulation that is contrary to the federal statute. I'm back to my IRS analogy. When the IRS loses the first case, the taxpayer gets a continuing benefit of that win. That's when they said, we made a mistake later with Degnan. But the agency reserves the right to maintain its position vis-a-vis other taxpayers or social security beneficiaries, and test its theory in probably other courts. And that's what you would preclude. Your Honor, a nationwide class will necessarily do that. We're not saying that they can't test it, but now we want a class-wide determination. If we can get the class certified, but all that's putting the cart before the horse. We're not even at the certified class stage. First thing we have to do is get back in court so that we can file a motion to certify the class, so. You're at getting the courts to not follow Congress's directive, 405-H. Your Honor, we think that Bowen versus City of New York and Shalala versus Illinois Council say that that channeling requirement, well, that's Shalala. And I'm happy to discuss that with you, Your Honor. What the Supreme Court said in Shalala was that there's no 1331 jurisdiction. That's what's proscribed by 405-G and H, that a federal question case can't be brought. In Shalala, the plaintiffs tried to prospectively for planning purposes bring a preemptive action, and the court said no. And in saying no, it said there's a difference between the channeling requirement of 405-G and H and the administrative law concepts of administrative exhaustion. And that, in that context, that's where the Supreme Court said, futility is a good exception. Are you familiar with the Toilet Goods Trilogy from the late 1960s? Your Honor, I believe that I have read them. I won't- No, I thought that solved this problem of pre-enforcement review challenges forever and ever. And the Supreme Court has made exceptions and has winked and dodged around those cases for the following almost 50 years. This is not an area where you can say one case, I cite one case, I win. The court is very inconsistent on these concepts. And that is on the channeling side, and the Michigan Academy exception- I mean, it's all one and the same. Don't say the channeling is different than administrative exhaustion. That's what exhaustion's all about. But Your Honor, the Supreme Court expressly said the difference in Shalala was that several independent exceptions for waiver, including futility, and it said channeling can't. The only one that they recognized for channeling was the Michigan Academy exception, which we aren't invoking. So the Supreme Court has spoken in 2000 and said that they are different and that exhaustion is subject to an independent waiver test for futility. And breathed life or reaffirmed the Bowen versus City of New York test. And if Bowen versus City of New York remains good law, we've invoked it, and a facial challenge should not have been successful to shut down the complaint. And I would like to reserve the last minute and a half of my time, if I may. Thank you, Your Honors. Ms. Laseki. Ms. Laseki. May it please the court, Lucy Laseki on behalf of Sylvia Burwell, the Secretary of Health and Human Services, who should be substituted for Kathleen Sebelius. Today, I just wanted to cover a few points briefly. With regard to the exhaustion point under 405G, we're in complete agreement with Your Honor, Judge Logan, regarding plaintiffs are simply misreading Illinois Council. That does require channeling, and it doesn't matter if it's a section 1331 case. Everything has to go through the administrative process. Plaintiffs can't go straight to federal court under the Social Security Act itself, which is what they want to do here. Under, my next point relates to waiver. I'll briefly discuss the three-part waiver test that the Supreme Court and the Eighth Circuit have used in 405G cases continuously. And I'd like to also briefly talk about their unprecedented request to apply a one-part waiver test in a 405G case. If a procedure has been established and accepted by the commissioner in making these calculations, what's the purpose of going through the administrative hurdles and hoops at this time? Your Honor, we believe this is really just a garden variety Chevron case. And certainly, the Secretary believes she is following the Medicare statute and how she allows Medicare premiums to be calculated. In Mr. Dignan's case, or she was following it before Mr. Dignan's case? Before Mr. Dignan. Frankly, we disagree with the Dignan one decision, but we are- You talked about the merits in response to a procedure question, right? Yes, and I apologize, I'm trying to get to Judge Beam's question. We believe that this really is a Chevron case, and that they do need to go through the administrative process to bring that Chevron challenge to bring forth their interpretation of what, how the Medicare statute should be implemented here. In Ringer, the court held that the claims challenging a procedure to determine an entitlement to benefits had to be channeled first. And likewise, Illinois Council held that statutory and regulatory requirements must proceed through the special review channel under 1395 F incorporating 405 G. The court there declined to distinguish between legal versus factual or whether it was a statutory, regulatory, or constitutional challenge. And the court even held that if the agency can't hear a particular contention or particular request for relief, it still has to be channeled through the agency. Both Ringer and Illinois Council recognize that courts should not prematurely interfere with the agency's opportunity to apply, interpret, or revise its policies and regulations under the Medicare statute. And here, the Degnan I methodology was created by the magistrate judge in the first instance and has never undergone administrative review. And so we believe it would be premature here for the district court to decide those plaintiffs, the other three plaintiffs' claims, without the benefit of administrative review. I think with that process that analogized to the text field. Is it, see, after Mr. Degnan's second complaint all got sorted out, he what, did he owe $12 or he had $12 coming? Your Honor, in Degnan I, for his 2004 to 2010, we owed him money and- In Degnan I, how much did he win? I believe it was a little over $700 for several years. So how many individual $700 cases, individually exhausted, does the judiciary have to see before the agency, what? Well, Your Honor, the judiciary would have- Thousands of them until the Supreme Court finally resolves the issue? No, Your Honor. That is not the position the agency is taking here, but we believe it's more than one. What's the end of the tunnel here? I don't see the light. What is the light? I don't see it. Well, as Your Honor pointed out, they're seeking a nationwide class. We didn't get to those class issues in this case, and- Well, they lost, they didn't get the certified in Degnan I. I didn't read why, but I know it didn't- Yes, he didn't, Mr. Degnan didn't pursue it. Stage here, Judge Doty didn't get to the certification stage. Right, and Your Honor, a certain- He said so, he said the next one, the next individually, we have to do them one at a time under 405G, right? Yes, and Your Honor, under 405, under the Medicare statute, there's also a stratified amount and controversy requirement. So the plaintiffs would need to establish the amount and controversy at the ALJ level, which is smaller, and then again at the district court level, which is larger. So if, and that requirement is separate and non-waivable. So they would, if there were a plaintiff who met the amount and controversy, exhausted, and proceeded through district court in the District of Minnesota, and were at the agency to receive an unfavorable decision, we would appeal, and then that would be resolved for this circuit, one way or the other, and- You didn't appeal Degnan I. No, we didn't, and by its terms, Degnan I was limited just to him, and the secretary decided she could live with the manual calculations and the extra burden imposed on the agency to do the Degnan I calculation just for one person. So your proposal is that a taxpayer in each of the circuits jump through the administrative hoops, and if the taxpayer wins in all of those circuits, and the circuit courts agree, then at that point an individual taxpayer probably wouldn't have to do the administrative route, or would you still make them jump through the hoops? Your Honor, I'm not sure that I can answer that question. We haven't had any other plaintiff spring a case that has made it to the federal district court level raising this issue. Maybe five would be futility, and everything else would fall in place. Well, I just, I can't say, Your Honor, that the agency would insist on reaching this issue in every single circuit, but certainly we don't even have a district-wide decision as to any plaintiff, much less a circuit-wide one, and we believe that the agency's policy is correct, and until we have a district court, another district court either conflict with the Degnan I decision for one plaintiff or affirm it, we really don't have to address that issue of how many is it going to take, but our position is it definitely takes more than one. The Degnan I case itself isn't sufficient. We need to have some administrative exhaustion. How many, what percentage of the people paying premiums are adversely affected by this particular reg? Your Honor, that... What quantity? How do we know? You say, well, nobody's gone to court, and then you say, well, there are monetary thresholds at each stage of the exhaustion process, and I envision the agency setting up a regime where nobody has enough money at stake to challenge this, and so you win by default. What assurance do I have that's not the case? Well, Your Honor, I think your assurance is the Degnan I case, which granted was a little bit different because Mr. Degnan raised a slightly different challenge. He was saying that the statute should never apply to allow the late enrollee increase to be greater than the COLA increase, so he said he should never have to pay it, so there was a larger amount of money involved, but certainly we believe under the regulatory procedures that exist in these types of cases, plaintiffs can aggregate. If all of these... They can? Yes. And comply with the individual exhaustion requirement? Well, I think that there's a fundamental misunderstanding between what we mean by aggregation of claims, which is governed by, I believe it's 42 CFR.1006, and what the plaintiffs think aggregation means. We think that it means what the regulation says it means, which is that if you go through the administrative process, and again, the threshold there is pretty low, and your claim is decided within the same amount of time as other claims raising that issue, then you can all aggregate together and go to federal court. So we don't think that that burden is too onerous, and at any rate, that's what Congress established, so that's what we're stuck with. And Congress didn't want every single Medicare dispute to be heard, or it wouldn't have enacted that amount in controversy requirement that's higher at the district court level. Mr. Pickens relies heavily on the Bowen case. Why is that reliance misplaced? Your Honor, we don't believe it's misplaced. We believe he's simply misreading Bowen v. City of New York. Bowen v. City of New York applied the three Eldridge factors very decisively, and then imposed this sort of additional equitable type test that said if there are unique circumstances, and in Bowen, that unique circumstance was that unrevealed secret policy, and we certainly don't have that here. We have a regulation and a statute that's been openly applied for years, so we don't think there's a conflict with Bowen. In fact, we think Eldridge, Bowen, Ringer, Illinois Council are all consistent that in order for exhaustion to be waived in a 405G case, you absolutely need to meet the three factors outlined for the first time in Eldridge, and then fleshed out even more in Bowen v. City of New York and subsequent precedents, including this circuit's precedents in cases like Clorinda, Thoribus, Schoolcraft. So, and with respect to the Titus case that Mr. Pickens was arguing about, we don't believe that that says what he says either. As I recall that case, it was merely remanded because the district court understood one factor test was to be applied, and there was no secret policy in Titus. And so the district court remanded, or pardon me, the Eighth Circuit remanded to allow the district court to consider whether all three of the waiver factors articulated in Schoolcraft were met. You think Shalala undermined Titus and Schoolcraft? With respect to the three-factor test, no, because Shalala v. Illinois Council specifically referred to Eldridge in the waiver discussion and cited that those factors had to be followed. Whether the merits decisions of Schoolcraft and, well, I think just of Schoolcraft would survive Illinois Council, I'm not sure about that. I think it's probably unlikely, because Illinois Council did set such a high bar for clearing the administrative process to get waiver of that, since everything has to be channeled. Just for a few words about Mandamus, we also believe Mandamus does not present an independent basis here for jurisdiction. And that's clear under the standard that the Supreme Court set forth in Ringer and that this court has followed in Taylor v. Barnhart and that other courts have followed, such as the Lifestar case from the 11th Circuit that we cited in our brief. And for Mandamus to always be available in a Social Security case would result in a permanent end run around 405G. And 405G cases are simply different than other types of exhaustion cases. And the plaintiffs heavily relied on cases outside the 405G context in their brief. And we submit those are simply irrelevant here. 405G is very different. And as far as the Lindquist v. Bowen case that plaintiffs rely on to try and support their Mandamus claim, the court there specifically held that it was outside the traditional scope of the Social Security Act. So we don't believe that that case helps them at all. Ringer says you need to exhaust in a 405G case before the court will even entertain a Mandamus claim. Likewise, we also argued there was no indisputable right to allow a Mandamus claim to proceed. Because again, this is a Chevron challenge challenging the Secretary's longstanding interpretation of a statute. At its heart, we believe this is a straightforward case. 405G and the Supreme Court recognize that exhaustion is required. And the standards are very high because of the comprehensive and mandatory exhaustion scheme that we have in 405G cases. The first two Eldridge factors are concededly not met by plaintiffs here. And the futility factor test or one factor test to waive exhaustion is not appropriate under Eldridge, Bowen v. City of New York, or the Eighth Circuit's precedents applying the 405G waiver test. And moreover, exhaustion serves a purpose by allowing agency review of the novel Degnan methodology and the development of an administrative record on issues such as the Mountain Controversy. And presentment also needs to be satisfied under Yamasaki and Eldridge. And the plaintiffs, also we believe that Plaintiff Degnan's claims are moot. But he too has a remedy through the administrative process for any new claims that he may have that would need to be presented and exhausted. The court doesn't have any further questions. Thank you. Thank you. Thank you. I think we just have some time. May it please the court. I'm only going to say a brief word about the alternative bases for affirming the judgment that she raises, because those issues simply weren't reached. The court only decided the subject matter jurisdictional issue. This court's longstanding policy is not to reach out and take those issues, especially issues like the Mountain Controversy, where the issue was barely briefed below. And the defect would probably be curable. At a minimum, plaintiffs would be able to go look for a substitute named plaintiff that could cure the problem. So the judgment would not be, the subject matter jurisdiction would not be uncurable. Opposing counsel talks about Illinois counsel and its citation to its prior authority in Matthews versus Eldridge and others. But the central point of Illinois counsel is, and let me just say, at page 12 through 13, this is what we are relying upon. The bar of section 405H reaches beyond ordinary administrative law principles of ripeness and exhaustion. And shortly thereafter, it goes on to say, doctrines of ripeness and exhaustion contain exceptions, however. For example, when exhaustion would prove futile, citing McCarthy versus Madigan and the McCart decision of the Supreme Court. The Supreme Court in Illinois counsel made clear that futility remains a standalone viable basis for waiving the exhaustion of administrative remedies requirement. And in this court's only post-Shillelagh decision, which is cited in our briefs. I just read did not establish that. I mean, you read a more or less offhand comment, followed by a lengthy analysis of Eldridge and its factors. You're reading much too much. The Supreme Court warns us all the time, don't take our dicta or our statements written for one purpose as gospel in the next case that's very different. And that's just what you're doing. Your Honor, I respectfully submit that the discussion of the legal versus factual is talking about whether there can be an exception to the channeling requirement. There is not a channeling problem in this case. We have expressly relied upon 405 G and H as the basis for subject matter jurisdiction. That's the channeling problem. We are not trying to evade that by invoking jurisdiction under the federal question statute. We accept that we are in this channel, and we say we satisfy a basis for waiving. I read channeling as a shorthand for why we require exhaustion. Your Honor, with respect, I don't think the precedents can be read that way. And one of the reasons why is in Shalala itself. It says we don't sub silentio overrule our prior precedents. What the government's argument asked this court to conclude is that Shalala somehow overruled Bowen versus City of New York without saying so. Bowen versus City of New York remains good law. It affirmed a Second Circuit decision, which is the only one which has expressly said whether the test is conjunctive or disjunctive. That decision said it was disjunctive. Utility is an independent basis. And we have clearly pleaded that this exhaustion requirement would be futile under the requirements of Bowen versus City of New York. And this court said that was sufficient in Titus versus Sullivan. That should entitle us to relief from this court, we believe, Your Honors. And I am out of time, so unless Your Honors have further questions, I will yield the podium. Thank you, counsel. It's a complex case, and it's been well-briefed and argued. We'll take it under advisement.